USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/09/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                                                    :
In Re: Bernard L. Madoff Investment Securities LLC                  :
                                                                    :
                                            Debtor.                 :
------------------------------------------------------------------- :   23-CV-0294 (VEC)
                                                                    :
KOCH INDUSTRIES, INC., as successor in interest to                  :   OPINION & ORDER
Koch Investment (UK) Company,                                       :
                                                                    :
                                            Appellant,              :
                                                                    :
            -against-                                               :
                                                                    :
IRVING H. PICARD, TRUSTEE,                                          :
                                                                    :
                                            Appellee.               :
------------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

This request for appeal arises out of one of the many clawback actions brought by Irving H. Picard, the Trustee in the liquidation proceedings for Bernard L. Madoff Investment Securities LLC ("BLMIS"). The Bankruptcy Court denied Koch Industries, Inc.'s motion to dismiss the Trustee's clawback action based on a statutory safe harbor precluding clawback of transfers made in connection with a stockbroker's "securities contract." In relevant part, the Bankruptcy Court found that, assuming the facts alleged in the Complaint are true, the safe harbor provision did not apply. Appellant seeks certification for the Second Circuit to review the Bankruptcy Court's decision on direct appeal or, in the alternative, for this Court to review the Bankruptcy Court's decision on interlocutory appeal. For the following reasons, Appellant's requests for appeal are DENIED.

# BACKGROUND[1]

The trustee in the BLMIS liquidation proceedings (the "Trustee") commenced an adversary proceeding in May 2009 against Fairfield Sentry Limited ("Fairfield"), a BLMIS feeder fund, to avoid and recover approximately $3 billion in fraudulent transfers from BLMIS to Fairfield.[2] *See* Am. Compl., *Picard v. Fairfield Sentry Ltd. (In re BLMIS)*, No. 09-01239 (CGM), Dkt. 23 (Bankr. S.D.N.Y. July 20, 2010). In 2011, the Bankruptcy Court approved a settlement agreement granting the Trustee a $3 billion consent judgment against Fairfield; Fairfield paid only $70 million of that judgment to the Trustee. Compl., *Picard v. Koch Indus., Inc. (In re BLMIS)* ("*Koch*"), No. 12-01047 (CGM), Dkt. 1, ¶ 38 (Bankr. S.D.N.Y. Feb. 9, 2012).

To recover the rest, the Trustee commenced a series of adversary proceedings in 2012 against Fairfield's subsequent transferees, including Koch Industries, Inc. ("Appellant"). *Id.* ¶¶ 39–40. About $20 million of Fairfield Sentry's fraudulent transfers from BLMIS (the "Transfers") were subsequently transferred to Appellant. *Id.* ¶¶ 32, 39. Shortly after this action

---

[1] For the purposes of this Opinion, the facts alleged in the Complaint are assumed to be true. *See In re Enron Corp.*, No. 01-16034 (SAS), 2006 WL 2548592, at *4 (S.D.N.Y. Sept. 5, 2006). The Complaint incorporates the Trustee's amended complaint in *Picard v. Fairfield Sentry Ltd. (In re BLMIS)*, No. 09-01239 (CGM), Dkt. 23 (Bankr. S.D.N.Y. July 20, 2010). *See* Compl., *Picard v. Koch Indus., Inc. (In re BLMIS)* ("*Koch*"), No. 12-01047 (CGM), Dkt. 1, ¶ 33 (Bankr. S.D.N.Y. Feb. 9, 2012).

The Court assumes familiarity with Bernard Madoff's Ponzi scheme and the resulting Securities Investor Protection Act ("SIPA") liquidation. *See Picard v. Citibank, N.A. (In re BLMIS)*, 12 F.4th 171, 178–83 (2d Cir. 2021).

[2] The Bankruptcy Code allows certain payments made by a debtor before bankruptcy to be "avoided"; such payments are "clawed back" to the bankruptcy estate and redistributed among creditors. An initial transfer from the debtor may be avoided if it is "preferential," "fraudulent," or "constructively fraudulent." A fraudulent transfer occurs if, within two years of filing for bankruptcy, a debtor transfers assets with the intention of defrauding its creditors. *See* 11 U.S.C. § 548(a)(1)(A); *Picard v. Katz (In re BLMIS)*, 462 B.R. 447, 450–51 (S.D.N.Y. 2011) (distinguishing preferential, fraudulent, and constructively fraudulent transfers). A trustee may claw back transfers from "any immediate or mediate transferee" of an initial transferee. *See* 11 U.S.C. § 550(a)(2). The Bankruptcy Code also incorporates state law, *see* 11 U.S.C. § 544(b)(1), which in this case allows the Trustee to recover fraudulent transfers made within six (as opposed to two) years of BLMIS's liquidation, *see Picard v. Merkin (In re BLMIS)*, No. 08-99000 (SMB), 2014 WL 6879064, at *4 n. 7 (S.D.N.Y. Bankr. Dec. 4, 2104). Safe harbor provisions in the Bankruptcy Code protect certain transfers from clawback. *See* 11 U.S.C. § 546.

was commenced, Appellant and other subsequent transferees moved to withdraw the reference to the Bankruptcy Court regarding, among other issues, one of Appellant's anticipated defenses to clawback: the applicability of a safe harbor under Section 546(e) of the Bankruptcy Code for transfers made in connection with a broker's securities contract (the "Safe Harbor"). *See* Mot. to Withdraw, *Koch*, No. 12-01047 (CGM), Dkt. Nos. 5–7 (CGM) (Bankr. S.D.N.Y. Apr. 2, 2012). Judge Jed Rakoff withdrew the reference and concluded that those initial transferees who "actually knew" that BLMIS was a Ponzi scheme were not entitled to the protections of the Safe Harbor. *See SIPC v. BLMIS (In re Madoff Secs.)* ("*Cohmad*"), No. 12-MC-0115 (JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013).[3]

In 2022, Judge Rakoff denied interlocutory appeal of the Bankruptcy Court's decision in another adversary proceeding against some of Fairfield's subsequent transferees. *See Picard v. Multi-Strategy Fund Ltd. (In re BLMIS)* ("*Multi-Strategy Fund*"), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *5–7 (S.D.N.Y. Nov. 3, 2022). In that case, Judge Rakoff declined to review the Bankruptcy Court's decision that the Safe Harbor does not apply to subsequent transferees even if they (as opposed to the initial transferee) did not have knowledge of BLMIS's fraud because the Safe Harbor, by its terms, applies only to the "initial transfer;" in this case, the initial transfer was from BLMIS to Fairfield, which allegedly had knowledge of Madoff's fraud. *Id.*

Shortly thereafter, the Bankruptcy Court denied Appellant's motion to dismiss this adversary proceeding. Appellant argued, in relevant part, that the Trustee failed to state a claim because, notwithstanding Judge Rakoff's decision in *Cohmad*, the Safe Harbor applies even if Fairfield allegedly knew of BLMIS's fraud. *See Koch*, No. 12-01047 (CGM), 2022 WL

---

[3]   About a year after Judge Rakoff decided *Cohmad*, the Second Circuit affirmed a related decision that the Safe Harbor *does* apply to transfers made from BLMIS to customers who were *not* aware of BLMIS's fraud, even though it is undisputed that BLMIS never executed any of the security transactions contemplated by its customer agreements. *See Picard v. Ida Fishman Revocable Trust (In re BLMIS)* ("*Fishman*"), 773 F.3d 411 (2d Cir. 2014).

17098698, at *3 (S.D.N.Y Bankr. Nov. 21, 2022). The Bankruptcy Court concluded that it was powerless to reconsider this issue in light of *Cohmad*, and, in any event, agreed with Judge Rakoff's reasoning, which it deemed consistent with the statutory text and Second Circuit dicta. *Id.* at *4.

On January 12, 2023, Appellant moved this Court to certify the Bankruptcy Court's decision for interlocutory appeal. *See* Notice of Interlocutory Appeal, Dkt. 1.[4] On February 6, 2023, Appellant requested, in the alternative, direct appeal of the Bankruptcy Court's decision to the Second Circuit. *See* Notice of Direct Appeal, Dkt. 13.[5] Because direct appeal would obviate the need for interlocutory appeal, the Court considers first whether a direct appeal is warranted.

## DISCUSSION

### I.    The Bankruptcy Court's Decision Is Not Suitable for Direct Appeal

Appellant requests certification of the Bankruptcy Court's decision denying its motion to dismiss; according to Appellant, the Bankruptcy Court erred by concluding that Appellant is not entitled to protection of the Safe Harbor if Fairfield had actual knowledge of BLMIS's fraud. The Bankruptcy Court's decision is not suitable for direct appeal because none of the conditions for direct appeal is satisfied.

---

[4]    On January 17, 2023, the Court denied the Trustee's request to transfer, pursuant to S.D.N.Y. Rule 13, this appeal to Judge Rakoff as "related" to closed appeals in *Cohmad* and *Multi-Strategy Fund*. *See* Order, Dkt. 9.

[5]    In addition to the Trustee, the Securities Investor Protection Corporation ("SIPC"), which is a party in interest and a statutory intervenor in all SIPA liquidations, *see* 15 U.S.C. § 78eee(d), filed a memorandum opposing Appellant's motion, *see* SIPC Mem., Dkt. 22.

**A. Legal Standard**

A district court must certify a bankruptcy court's decision for direct appeal to the court of appeals if the order (1) involves a question of law "as to which there is no controlling decision" by the relevant court of appeals or the Supreme Court; (2) involves a "matter of public importance"; (3) involves a question of law "requiring resolution of conflicting decisions;"[6] or if (4) direct appeal "may materially advance the progress" of the case.  28 U.S.C. § 158(d)(2)(A); *see also Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015) (explaining that certification is proper "when any one" criterion is satisfied).  The Second Circuit has discretion to decide whether there is, in fact, a "compelling reason" for direct appeal before reviewing the issue.  *See Weber v. United States,* 484 F.3d 154, 161–62 (2d Cir. 2007).

As to the first criterion, an appeal involves a question of law as to which there is no "controlling" authority if there is "ambiguity in resolving the issue."  *In re Ladder 3 Corp.*, No. 17-CV-04733 (NG), 2018 WL 2298349, at *3 (E.D.N.Y. Mar. 28, 2018) (internal quotation marks and citation omitted); *see also In re Gravel*, No. 11-10112 (CAB), 2019 WL 3783317, at *4 (Bankr. D. Vt. Aug. 12, 2019) (noting that controlling law "may be supplied by combining holdings from multiple cases") (internal quotation marks and citation omitted).  If the Bankruptcy Court's decision is based on the "plain language of [the] Bankruptcy code . . . and settled case law in [the] Circuit," there is no basis to grant certification of direct appeal even in the absence of circuit-level case law that directly addresses the issue.  *In re MF Glob. Holdings Ltd.*, No. 11-15059 (MG), 2012 WL 1438262, at *1 (Bankr. S.D.N.Y. Apr. 25, 2012).

As to the second criterion, an order involves "a matter of public importance" if the question on appeal "transcends the litigants."  *In re LATAM Airlines Grp. S.A.*, No. 20-11254

---

[6]   Appellant concedes that it cannot satisfy this ground for direct appeal.  *See* Appellant Mem. in Supp. of Direct Appeal, Dkt. 13-1, at 10.

(JLG), 2022 WL 2962948, at *8 (Bankr. S.D.N.Y. July 26, 2022).  A legal issue may be of public importance if its resolution has broad implications for a bankruptcy proceeding, could impact a large number of jobs, or affects vital community interests.  *See In re Springfield Hosp., Inc.*, 618 B.R. 109, 116–18 (Bankr. D. Vt. 2020); *see also In re Sabine Oil & Gas Corp.*, 551 B.R. 132, 141 (Bankr. S.D.N.Y. 2016) ("Simply because a matter is important to certain members of the public does not render it a matter of 'public importance' that meets the standard for direct certification.").  An issue that involves "exceedingly anomalous facts" is unlikely to have public importance.  *In re LATAM Airlines Grp. S.A.*, 2022 WL 2962948, at *8.

As to the final criterion, direct appeal would "materially advance" a case if a bankruptcy court has made a ruling that "essentially determine[s] the result of future litigation" because "the parties adversely affected by the ruling might very well fold up their tents if convinced that the ruling has the approval of the court of appeals, but will not give up until that becomes clear." *Weber*, 484 F.3d at 158.  A request for direct appeal that raises critical issues "the resolution of which are necessary to support the development and execution" of a bankruptcy plan would "materially advance" the case's progress.  *In re LATAM Airlines Grp. S.A.*, 2022 WL 2962948, at *14 (internal citation omitted).  Certification is not likely to materially advance a case's progress simply because the case is likely to be appealed once a bankruptcy court issues a final order.  *In re Lehman Bros. Inc.*, No. 13-CV-5381 (DLC), 2013 WL 5272937, at *5 (S.D.N.Y. Sept. 18, 2013).

### B.  Application

The Bankruptcy Court's decision is not suitable for direct appeal because it is consistent with controlling law, the issue for appeal does not involve a matter of public importance, and direct appeal would not materially advance this case.

### 1. The Bankruptcy Court's Decision is Consistent with Controlling Law

There is controlling law that supports the Bankruptcy Court's decision: the Safe Harbor's plain text and purpose, reinforced by Second Circuit law, indicate that a transferee cannot take advantage of the Safe Harbor if it had actual knowledge of the transferor's fraud.

In relevant part, the Safe Harbor protects from clawback any transfer made "by or to (or for the benefit of) a . . . stockbroker" in connection with a "securities contract,"[7] except in case of fraudulent transfers under Section 548(a)(1)(A) of the Bankruptcy Code.[8]  11 U.S.C. § 546(e). If, as the Trustee alleges in this case, both parties to a transfer knew that it was being made in connection with a Ponzi scheme, then the Safe Harbor cannot apply by its terms because there was no "securities contract" that could trigger its application.  *See Cohmad*, 2013 WL 1609154, at *3 (concluding that the Safe Harbor does not apply if transferees had "actual knowledge" of BLMIS's scheme because such transferees "must have known that the transfers could not have been made in connection with an actual 'securities contract'"); *see also Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 893 (2018) (beginning its interpretation of Section 546 with the statute's plain text).  An agreement, after all, requires "a manifestation of mutual assent on the part of two or more persons."  *Fishman*, 773 F.3d at 421 (citing Restatement (Second) of

---

[7]    A securities contract is defined, in relevant part, as a "contract for the purchase, sale, or loan of a security" and includes, *inter alia*, "any other [similar] agreement or transaction."  *See* 11 U.S.C. § 741(7).

[8]    Although BLMIS's transfers were made with intent to defraud creditors under Section 548(a)(1)(A), the parties do not dispute that the alleged transfers from BLMIS to Fairfield took place more than two years before BLMIS's SIPA liquidation; this exception to the Safe Harbor, therefore, does not apply.  *See* Def. Mem., *Koch*, No. 12-01047 (CGM), Dkt. 106, at 8 (Bankr. S.D.N.Y. July 22, 2022); Trustee Mem., *Koch*, No. 12-01047 (CGM), Dkt. 110, at 5 (Bankr. S.D.N.Y. Sept. 30, 2022).  The Trustee seeks to recover fraudulent transfers pursuant to state law, which allows clawback within six years of transfer.  *See* 11 U.S.C. § 544(b)(1) (incorporating state law).

The parties also do not dispute for the purposes of this motion that, in order to successfully invoke the Safe Harbor, Appellant must establish that the Safe Harbor applies to Fairfield; BLMIS's initial transferee.  *See* Appellant Mem. in Supp. of Direct Appeal at 11; *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).

Contracts § 3 (1979), § 3 cmt. a.). Rather than agreeing to a securities contract, BLMIS and Fairfield allegedly agreed to commit fraud. By its plain terms, the Safe Harbor, therefore, does not apply.[9]

This conclusion also follows from the purpose of the Safe Harbor, which was enacted to "minimiz[e] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries." *In re Enron Creditors Recovery Corp.*, 651 F.3d 329, 334 (2d Cir. 2011) (quoting *Kaiser Steel Corp. v. Charles Schwab & Co., Inc.*, 913 F.2d 846, 849 (10th Cir. 1990)). Because Fairfield allegedly knew that BLMIS's transfers were connected to a Ponzi scheme rather than to actual securities transactions, any clawback is unlikely to cause "displacement" in the *bona fide* securities industry. *See Cohmad*, 2013 WL 1609154, at *4 (explaining that allowing a transferee with actual knowledge of BLMIS's scheme to avoid clawback would not "promote the legitimate workings of the securities market and the reasonable expectation of legitimate investors").

Although the Second Circuit has not had occasion to decide this particular issue, it endorsed this reasoning in *Fishman*. Concluding that the Safe Harbor *did apply* to transfers made from BLMIS to customers who were *not* aware of BLMIS's fraud — even though it is

---

[9] Appellant asserts that this interpretation of the Safe Harbor is unreasonable because Congress elsewhere explicitly required "actual knowledge" and "good faith" to satisfy certain provisions of the Bankruptcy Code. *See* Appellant Mem. in Supp. of Direct Appeal at 17 n.8; Appellant Mem. in Supp. of Interlocutory Appeal, Dkt. 3, at 11–13. Appellant distorts the Safe Harbor's plain meaning. Rather than imposing an additional "actual knowledge" or "good faith" requirement, the Safe Harbor only attaches in the first instance if a transfer was made in connection with a securities contract. Contracts, as the Second Circuit explained in *Fishman*, require mutual assent. *Fishman*, 773 F.3d at 421. For that reason, an "actual knowledge" or "good faith" provision would have been superfluous. *See also SIPC v. BLMIS (In re Madoff Secs.)* ("*Cohmad*"), No. 12-MC-0115 (JSR), 2013 WL 1609154, at *4 * nn.1–2 (S.D.N.Y. Apr. 15, 2013) (distinguishing "good faith" from "actual knowledge").

Appellant also argues that excluding transferees with "actual knowledge" of BLMIS's fraud from the Safe Harbor is at odds with the statute's structure because it expressly carves out fraudulent transfers under 11 U.S.C. § 548(a)(1)(A); *Cohmad*'s reading of the statute purportedly renders this carveout superfluous. *See* Appellant Mem. in Supp. of Interlocutory Appeal at 13–15. As a threshold matter, the Safe Harbor's plain text governs above all else. The carveout for fraudulent transfers is also consistent with *Cohmad*, reinforcing the Safe Harbor's inapplicability to transactions tainted by fraud.

undisputed that BLMIS never executed any of the security transactions contemplated by its customer agreements — the Second Circuit emphasized that innocent customers had "every right to avail themselves of all the protections afforded to the clients of stockbrokers" because they had "every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions . . . ." *Fishman*, 773 F.3d at 420. BLMIS's "breach of contract" did not "vitiate[]" the contract in the first instance. *Id.* In contrast, because Fairfield allegedly knew that BLMIS was not actually engaged in legitimate securities transactions, Appellant is not entitled to a Safe Harbor provision that is designed to protect legitimate securities transactions. *Cf. In re MacMenamin's Grill Ltd.*, 450 B.R. 414, 425 (Bankr. S.D.N.Y. 2011) (noting that "Congress never could have meant to permit section 546(e) to protect transactions that themselves were assaults on the securities markets, as that would be a perversion of the statute's purpose") (citation omitted).

      Appellant's arguments to the contrary are unpersuasive. It insists that there is no controlling authority on this issue because there is no "definitive precedential guidance" from the Supreme Court or the Second Circuit. Appellant Mem. in Supp. of Direct Appeal, Dkt. 13-1, at 11. But the plain language of the Bankruptcy Code coupled with the Second Circuit's interpretation of the exact provision at issue provide ample authority to preclude direct appeal. *See In re MF Glob. Holdings Ltd.*, 2012 WL 1438262, at *1 (declining to certify an issue for direct appeal despite a lack of controlling circuit precedent "specifically regarding" the same issue because if that were enough for appeal, then "a party could simply define an issue so narrowly as to guarantee its ability to appeal the adverse decision"); *In re Lehman Bros. Inc.*, 2013 WL 5272937, at *3–4 (declining to certify an issue for direct appeal because the Second

Circuit had addressed the appeal's "central issue," albeit under different factual circumstances).[10] Indeed, Appellant has not cited any "conflicting decisions" that have "created confusion" in this area of the law. *Weber*, 484 F.3d at 161; *see also See In re Kumtor Gold Co. CJSC*, No. 21-CV-6578 (AKH), 2021 WL 4926014, at *6–7 (S.D.N.Y. Oct. 20, 2021) (denying direct appeal in part because there were "no conflicting decisions regarding the narrow issue decided by the Bankruptcy Court").

Appellant also maintains that the *Fishman* decision supports its position that it is entitled to Safe Harbor protection because *Fishman* emphasized the Safe Harbor's breadth, even in the context of a Ponzi scheme. Appellant Mem. in Supp. of Direct Appeal at 14. Just because the Safe Harbor is broad does not mean that it shields transferees who knowingly collude with a fraudster. That is the exact scenario the Second Circuit distinguished in *Fishman*; and that is exactly what the Trustee alleges happened here.[11] *See In re Ladder 3 Corp.*, 2018 WL 2298349, at *3 (noting that a litigant cannot seek direct appeal based on a lack of controlling law by making an "obviously flawed argument"). If Appellant's argument that knowledge of fraud is irrelevant to entitlement to the Safe Harbor were correct, the *Fishman* decision would make no sense. If Appellant were correct, the Second Circuit would not have stressed the fact that

---

[10] Appellant maintains that there is no controlling law here because "Circuit-level dicta, without more," is not enough. Appellant Mem. in Supp. of Direct Appeal at 14–15. Unlike in the cases Appellant cites for this argument, however, the Safe Harbor's plain text and the logical application of *Fishman* command only one outcome. *See In re Bruce*, No. 21-CV-7455 (CS), 2021 WL 6111925, at *3 (S.D.N.Y. Dec. 27, 2021) (certifying an issue for direct appeal in part because the Second Circuit indicated via dicta that the issue was "open"); *Katz v. Kerski Assocs., L.P. (In re Ressler)*, No. 17-CV-666 (VAB), 2018 WL 10246961, at *4 (D. Conn. Jan. 31, 2018) (certifying an issue for direct appeal despite a "related" Second Circuit decision because the issue had "divided courts"); *Troisio v. Erickson (In re IMMC Corp.)*, No. 15-1043 (KJC), 2016 WL 356026, at *5 (D. Del. Jan. 28, 2016) (certifying an issue for direct appeal in part because Third Circuit dicta contradicted the "express language" and legislative history of the relevant statute).

[11] Appellant also invokes the Trustee's motion in support of direct appeal of a similar issue almost a decade ago in a separate BLMIS proceeding. *See* Appellant Mem. in Supp. of Direct Appeal at 11–12. Putting aside whether the Trustee's past briefing is relevant at all in the absence of an estoppel argument, the Trustee's motion preceded the Second Circuit's interpretation of the Safe Harbor in *Fishman*. For that reason, the Court does not consider the Trustee's past brief instructive.

Fishman's ignorance of the fraud is what entitled her to the Safe Harbor; it would have, instead, held that knowledge of fraud is irrelevant.

In short, a direct appeal is not appropriate because there is controlling law on the issue at hand.

### 2. The Issue for Appeal Does Not Involve a Matter of Public Importance

The issue for appeal does not involve a matter of public importance because its resolution is unlikely to have a wide impact beyond this case. As amici financial institutions argued in *Fishman*, the "bright-line rule" that transferees who knowingly participate in fraud cannot take advantage of the Safe Harbor is intuitive and predictable by industry standards. Brief of Amici Curiae, *Fishman*, No. 12-2557, Dkt. 346, at 8–11, 28 (2d Cir. Jan. 30, 2014).[12] Certifying direct appeal would primarily serve the minority of transferees engaged in or contemplating securities fraud, not the public at large. *See In re LATAM Airlines Grp. S.A.*, 2022 WL 2962948, at *8 (noting that resolution of an issue involving "exceedingly anomalous facts" is unlikely to have public importance). Even assuming the Bankruptcy Court's decision were reversed, Appellant has identified only 17 adversary proceedings that would be completely dismissed as a result. *See* Appellant Mem. in Supp. of Direct Appeal at 19. Direct appeal would not, therefore,

---

[12] Appellant urges the Court to find otherwise because a "fact-intensive inquiry" into a transferee's actual knowledge, and purported uncertainty as to the point in time at which such knowledge is measured, erode "market finality." *See* Appellant Mem. in Supp. of Direct Appeal at 17–18; Appellant Mem. in Supp. of Interlocutory Appeal at 18–19. That argument distorts the public interest at stake. There is a strong public interest in a functioning, fair, transparent, and legitimate securities market, not in reducing uncertainty for fraudsters trying to optimize profit without compromising access to Safe Harbor immunity. Moreover, a transferee is inherently aware of its own knowledge of fraud, and *Cohmad* instructs transferees that any knowledge of fraud jeopardizes their ability to avoid clawback. Factual disputes arising from the application of this straightforward legal rule are a natural part of litigation. Although innocent subsequent transferees can less readily determine whether an initial transfer was colored by fraud, the same can be said of fraudulent transfers under Section 548(a)(1)(A) of the Bankruptcy Code (or Section 544(b)(1), which incorporates state law). The Bankruptcy Code accounts for this issue by limiting clawback from subsequent transferees if they act in "good faith" and transact "for value." 11 U.S.C. § 550(b); *see also Citibank*, 12 F.4th at 198 (explaining that Section 550 is "an act of legislative grace" shielding subsequent transferees who "might be innocent third parties") (internal quotation marks and citation omitted).

meaningfully affect BLMIS's liquidation. *See In re LATAM Airlines Grp. S.A.*, 2022 WL 2962948, at *15.[13]

The public interest in resolving the Bankruptcy Court's interpretation of the Safe Harbor does not, therefore, weigh in favor of permitting a direct appeal.

### 3. Direct Appeal Would Not Materially Advance the Progress of the Case

Certifying direct appeal would delay rather than materially advance the termination of this adversary proceeding. Direct appeal would only resolve this case if the Second Circuit were to side with Appellant; as explained *supra*, that is extremely unlikely.[14] Instead, direct appeal would likely add to the Second Circuit's heavy BLMIS caseload, resulting in further delay before the case is sent back to the Bankruptcy Court for discovery. *See In re Ladder 3 Corp.*, 2018 WL 2298349, at *3 (denying direct appeal in part because certification would "simply cause the very 'needless litigation'" that the appeal statute was "designed to avoid") (citation omitted); *In re Lehman Bros.*, 2013 WL 5272937, at *5 (denying direct appeal in part because it was "not clear" that certification would materially advance the case). Direct appeal would also not have a material impact on BLMIS's liquidation. The issue for appeal affects only a "subset" of creditors and "do[es] not impact the entire claims adjudication procedure. . . ." *In re LATAM*

---

[13]   Issues of statutory interpretation (as opposed to constitutional issues) are generally less likely to implicate the public interest. *See In re Gen. Motors Corp.*, 409 B.R. 24, 28 (Bankr. S.D.N.Y. 2009) (denying a motion for certification because the movants contested "a matter of statutory interpretation and common law analysis" even though the issue was "undoubtedly . . . important to the individual litigants" and the overall bankruptcy case was "a matter of public importance").

[14]   Appellant asserts that direct appeal is warranted because reversal of the Bankruptcy Court's decision would dismiss the case against it. Appellant Mem. in Supp. of Direct Appeal at 18. But if that were enough for certification, "every decision denying a motion to dismiss or other pretrial dispositive motion" would qualify. *In re Homaidan*, No. 17-01085 (ESS), 2019 WL 10691231, at *4 (Bankr. E.D.N.Y. Mar. 18, 2019). It is also well established that the "mere expectation" that an adversary proceeding will be appealed once resolved by a bankruptcy court is not enough to require direct appeal. *In re Lehman Bros. Inc.*, No 12-CV-538 (DLC), 2013 WL 5272937, at *5 (S.D.N.Y. Sept. 18, 2013); *see also In re Santiago-Monteverde*, No. 14-CV-1611 (PKC), 2014 WL 1301862, at *2 (S.D.N.Y. Mar. 25, 2014) (collecting cases).

*Airlines Grp. S.A.*, 2022 WL 2962948, at *14–15 (concluding that direct appeal was not warranted and contrasting the case to a BLMIS bankruptcy proceeding in which the issue for appeal "involved over 15,000 customer claims totaling billions of dollars").

Direct appeal would, therefore, not materially advance the progress of this case.

### II. The Court Denies Interlocutory Review of the Bankruptcy Court's Decision

The Court denies interlocutory review of the Bankruptcy Court's decision because two of the conditions for interlocutory appeal have not been satisfied.[15]

#### A. Legal Standard

Leave to appeal a non-final Bankruptcy Court order is governed by 28 U.S.C. § 1292(b). *See Hometrust Mortg. Co. v. Lehman Bros. Holdings*, No. 15-CV-4060 (WHP), 2015 WL 5674899, at *2 (S.D.N.Y. Sept. 25, 2015); *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 672–73 (S.D.N.Y. 2011). That statute provides that leave to appeal should be granted only if (1) the appeal "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also In re Facebook, Inc. IPO Secs. & Derivative Litig.*, 986 F. Supp. 2d 524, 529–30 (S.D.N.Y. 2014). The party seeking leave to appeal bears the burden of demonstrating that all three criteria have been met. *Id.* at 529.

---

[15] Appellant's request for interlocutory appeal is unusual given the posture of this case; Judge Rakoff already decided the issue for appeal with respect to Appellant in *Cohmad*. Appellant argues that the Court should reconsider Judge Rakoff's decision because it was "in error" and preceded *Fishman*. *See* Appellant Reply in Supp. of Interlocutory Appeal, Dkt. 12, at 7. Because the Court agrees with Judge Rakoff's reasoning in *Cohmad* and declines to grant leave for interlocutory appeal, it does not decide whether the *Cohmad* decision constitutes law of the case.

As to the first criterion, the Trustee assumes that the Bankruptcy Court's decision presents a controlling question of law.  *See* Trustee Mem. in Opp. to Interlocutory Appeal, Dkt. 10, at 8.  The Court does the same for the purposes of this opinion.

As to the second criterion, a "substantial ground for difference of opinion" exists where "there is conflicting authority on the issue" or where "the issue is particularly difficult and of first impression in the Second Circuit."  *Hometrust*, 2015 WL 5674899, at *2 (quoting *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013)).

As to the third criterion, an appeal "advance[s] the ultimate termination of the litigation" if the appeal promises to "advance the time for trial or shorten the time required for trial."  *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001) (quoting *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 53 (S.D.N.Y. 1998)).

Even when all three criteria are met, a district court retains "unfettered discretion" to deny leave to appeal for "any reason," including judicial economy.  *In re Facebook*, 986 F. Supp. 2d at 530 (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)).  As a general rule, interlocutory appeals are "strongly disfavored" in the federal system.  *Id.* (internal quotation marks and citation omitted).  They should be "strictly reserved for exceptional cases," and they are "especially rare in early stages of litigation."  *Id.* at 533; *see also In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (discussing the "exceptional" circumstances justifying interlocutory appeal).

### B. Application

Interlocutory review of the Bankruptcy Court's decision is unwarranted for substantially the same reasons direct appeal is inappropriate.

There is no substantial ground for difference of opinion as to the Bankruptcy Court's interpretation of the Safe Harbor.  As discussed *supra*, the Safe Harbor's plain text and the

Second Circuit's decision in *Fishman* make clear that the Safe Harbor provision is designed to protect the *bona fide* securities industry; as such, it does not provide a safe harbor for a transferee with actual knowledge of BLMIS's fraud to avoid clawback. *See Dill v. JPMorgan Chase Bank, N.A.*, No. 19-CV-10947 (KPF), 2021 WL 3406192, at *8 (S.D.N.Y. Aug. 4, 2021) (declining interlocutory appeal in part because "[m]ere conjecture that courts would disagree on the issue or that the court was incorrect in its holding" was not a substantial ground for difference of opinion).

Granting Appellant's motion for interlocutory appeal would not materially advance the ultimate resolution of this litigation because, as discussed *supra*, appeal would only further delay discovery, and the issue affects only a handful of adversary proceedings. *See In re BLMIS*, No. 22-CV-6561 (LGS), 2023 WL 395225, at *6 (S.D.N.Y. Jan. 25, 2023) (denying interlocutory appeal of a bankruptcy court's decision because there was "no substantial ground for difference of opinion" about whether the Trustee should have prevailed at the pleading stage and there was "therefore little likelihood that an appeal would advance the ultimate termination of th[e] case").

## CONCLUSION

For the foregoing reasons, Appellant's requests for direct appeal or interlocutory appeal of the Bankruptcy Court's decision are DENIED.

The Clerk of Court is respectfully directed to terminate all open motions and to close the case.

**SO ORDERED.**

**Date: May 9, 2023**
**New York, NY**

_____
**VALERIE CAPRONI**
**United States District Judge**